# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| ROBERT TURCOTTE, d/b/a PREMIUM ) <br> CATALYTIC CONVERTER REFINING, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GLOBAL REFINING GROUP, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 3:21cv138–HEH |

## <u>MEMORANDUM OPINION</u>
### (Transferring Venue)

On August 6, 2021, the Court ordered the parties to file briefs addressing whether the Court should transfer the case to the Southern District of New York *sua sponte*. (ECF No. 37.) The parties filed memoranda supporting their respective positions. The Court heard oral arguments on the matter at a hearing on October 28, 2021. For the reasons stated herein, the Court, in its discretion, will transfer the case to the Southern District of New York.

Plaintiff Robert Turcotte, doing business as Premium Catalytic Converter Refining ("Plaintiff" or "Turcotte"), and Global Refining Group, Inc. ("Defendant" or "Global"), entered into a contract to recycle catalytic converters (the "Recycling Agreement") on June 16, 2020.[1] The Recycling Agreement is governed by Virginia Law. Turcotte shipped 2,660 pounds of catalytic converters to Global's facility in Lunenburg County,

---

[1] All facts are taken from Plaintiff's Complaint in this case (Compl., ECF No. 1), the parties' briefs (ECF Nos. 38, 39) or from the parties' arguments at the hearing on October 28, 2021.

Virginia pursuant to the Recycling Agreement on December 21, 2020.  Global confirmed

receipt of the converters but did not pay Turcotte.  On January 14, 2021, Global issued a

written acknowledgment that it owed Turcotte $343,801.28 but continued to refuse to pay

Turcotte.  Instead, Global filed a Complaint in the Southern District of New York on

January 21, 2021.  Compl, ECF No. 1, *Global Refining Group, Inc. v. PMD Analysis Inc.*,

Case No. 1:21cv532 [hereinafter "New York Case"].  In the New York Case Complaint,

Global alleges that Turcotte and a business partner, Monica Armstrong, violated a

separate contract (the "Photo Agreement").  The Photo Agreement gave Turcotte access

to a database of photos and assay[2] information on catalytic converters.  Global alleges

that Turcotte unlawfully republished and sold access to 8,079 of these photos and assay

results on a new website.[3]  Turcotte then filed *his own* Complaint in this Court on

March 3, 2021, based on Global's refusal to pay for the catalytic converters and honor the

Recycling Agreement.[4]  In its Answer to the Complaint in this case, Global defends

against Turcotte's allegations by arguing that it is not obligated to pay Turcotte after he

materially breached the Photo Agreement.  (Answer at 8, ECF No. 6.)  In essence, Global

---

[2] "Assay" in this context means the testing and analysis of a metal's content or quality. *See Assay*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/assay (last visited Nov. 3, 2021).

[3] Based on these allegation, Global brings five claims in the New York Case: (I) Misappropriation of Trade Secrets pursuant to the Defend Trade Secrets Act, (II) Copyright Infringement, (III) Misappropriation of Trade Secrets under common law, (IV) Unfair Competition, and (V) Breach of Contract. Compl., New York Case. For clarity, the Breach of Contract claim alleges a breach of the Photo Agreement, not the Recycling Agreement. *Id.*

[4] Plaintiff's claims include: (I) Breach of Contract, (II) Account Stated, and (III) Unjust Enrichment. (Compl., ECF No. 1.)

contends that the Photo Agreement and Recycling Agreement are so intertwined that
Turcotte breaching one should bar him from recovery pursuant to the other.  Global also
seeks leave to amend its Answer and add four counterclaims arising out of the breach of
the Photo Agreement.  (Mot. to Amend, ECF No. 23).  The Court sought briefing on
whether *sua sponte* transfer was appropriate because of the perceived interconnectedness
of Global's defense in this case and the New York Case.

"For the convenience of parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or division where it might have
been brought." 28 U.S.C. § 1404(a).  The decision to transfer a case rests in the district
court's sound discretion.  *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va.
2003).  A district court may transfer a case to another district *sua sponte*.  *Sadighi v.
Daghighfekr*, 36 F. Supp. 2d 267, 278 (E.D. Va. 1999); *Magic Toyota, Inc. v. Se. Toyota
Distributors, Inc.*, 784 F. Supp. 306, 321 (D.S.C. 1992) (noting that the parties deserve an
opportunity to be heard before transfer).  Transfer under § 1404(a) involves a two-step
analysis: "(1) whether the claims might have been brought in the transferee forum, and
(2) whether the interest of justice and convenience of the parties and witnesses justify
transfer to that forum." *Koh*, 250 F. Supp. 2d at 630.

When there is only one defendant, venue is generally proper in any district in
which the defendant resides.  28 U.S.C. § 1391(b).  For venue purposes, corporations
reside in every district where personal jurisdiction over them exists.  *Id.* § 1391(c).
Among other instances, personal jurisdiction is created where the defendant took the
"voluntary action of initiating litigation" and thus consented to the jurisdiction of the

3

district court including answering for any counterclaims that other parties may bring. *The Fox Grp., Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 415 (E.D. Va. 2010); *see J. McIntyre Machinery, Ltd. V. Nicastro*, 564 U.S. 873, 880 (2011) (noting that consent creates personal jurisdiction generally). Thus, personal jurisdiction over Global existed in the Southern District after it voluntarily initiated litigation against Turcotte there on January 21, 2021. *See The Fox Grp.*, 749 F. Supp. 2d at 415. Because personal jurisdiction existed, proper venue over Global also existed.[5] *See* 28 U.S.C. § 1391. The Southern District, therefore, satisfies § 1404(a) as a forum where the Plaintiff's claim might have originally been brought.

Courts weigh four factors at the second step of the § 1404(a) analysis: (1) the plaintiff's choice of venue; (2) convenience to witnesses; (3) convenience of the parties; and (4) the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

Plaintiff's choice of venue "is typically entitled to substantial weight," but the amount of weight depends on the number of contacts between the venue and the underlying claims. *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 3d 991, 995 (E.D. Va. 2011). Here, Plaintiff's choice of the Eastern District of Virginia deserves some weight. Defendant resides in the District. While the parties agreed to the Recycling Agreement via the internet, it is governed by Virginia law and the events

---

[5] Of course, subject matter jurisdiction must also be present. Here, subject matter jurisdiction exists over Plaintiff's claims both in the Eastern District of Virginia and in the Southern District of New York. 28 U.S.C. § 1332.

contemplated by the Recycling Agreement occurred within the Eastern District. Defendant's asserted defense relating to the Photo Agreement, however, has no freestanding connection to the Eastern District. Plaintiff allegedly republished Defendant's photos and assay information in Canada and the Photo Agreement is governed by New York law. Thus, Plaintiff's choice of the Eastern District of Virginia deserves some, but not substantial weight.

The convenience of witnesses and parties is about equal in either district. While Plaintiff admits that New York is closer to Canada, where he resides, he argues that the differing convenience between traveling to Virginia over New York is minimal. While Defendant resides in Virginia, it points out that it has a nationwide and worldwide footprint, and thus, the Eastern District of Virginia is no more convenient for it than the Southern District of New York. As to witness convenience, Plaintiff proffered at the hearing that only two witnesses would need to be called: Turcotte himself and a corporate representative of Global. Defendant agreed that a corporate representative, likely from Virginia, would need to be called but that other witnesses related to its Photo Agreement defense would need to be called also. Those witnesses reside in Nevada, Canada, and perhaps other locations.

Lastly, the Court must consider the interest of justice in transferring or retaining the case. The interest of justice analysis encompasses "those factors unrelated to witness and party convenience." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939–40 (E.D. Va. 2001). "This . . . includes circumstances such as 'the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to

premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment.'" *Id.* (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988)).  Plaintiff argues that the case should remain in the Eastern District of Virginia because cases are resolved quicker here.  That may be true, but resolving this case at any speed would inevitably require litigating the same issues presented in the New York Case.  Defendant insists that it will defend Plaintiff's allegations by referencing the exact same factual content at issue in New York.[6]  The facts relevant to Global's defense in this case already overlap so completely that Plaintiff turned over the exact same documents during the first round of discovery in both cases.[7]  Such an overlap is bound to waste judicial resources and may lead to conflicting judgments.  Plaintiff argues that Defendant conjured up this defense as a sham to make the cases look related, but the Court cannot consider the merits of that argument so early in the litigation.

Thus, the interest of justice at least calls for this case to be consolidated with the New York Case.  But that does not decide whether the Eastern District of Virginia or the Southern District of New York is a better venue for a consolidated action.  For an answer to that question, the Court turns to the first-to-file rule.  The rule instructs courts to favor

---

[6] Plaintiff argues that Defendant seeks to amend its Answer now in an attempt to make the issues presented in this case overlap more with the issues in the New York Case.  Regardless of whether the Court grant's Defendant's Motion for Leave to Amend, Defendant sought to bring up Plaintiff's compliance with the Photo Agreement as a defense in its original Answer. (Answer at 8.)

[7] Defendant proffered this information to the Court at oral argument and Plaintiff did not disagree.

the first-filed lawsuit's venue over the second-filed when the suits involve similar factual and legal issues. *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va. 2019); *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982). First, to determine whether the first-to-file rule applies at all, the Court should consider the timing of the filings, and the similarity of the parties and issues involved. *Gibbs*, 368 F. Supp. 3d. at 914. "The parties and issues need not be identical, as the first-to-file rule may apply if [they] 'are substantively the same or sufficiently similar.'" *Id.* (quoting *Victaulic Co. v. E. Indus. Supplies, Inc.*, No: 6:13-01939, 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013)). Here, Global filed suit in the New York Case on January 21, 2021 while Turcotte filed this case on March 3, 2021. The parties involved in both closely match. The only difference is that the New York Case also involves Turcotte's business partner, Armstrong, and an additional business of which Turcotte is a director. As detailed in depth above, the issues of both cases overlap substantially but are not identical. The New York Case focuses on the Photo Agreement while the case in this Court focuses on the Recycling Agreement. Both, however, are inextricably linked by Global's defense in this case: that it was not obligated to pay Turcotte under the Recycling Agreement since he violated the Photo Agreement. Therefore, the first-to-file rule is applicable.

The first-to-file rule is not mechanical and unyielding. *Gibbs*, 368 F. Supp. 3d. at 914. The United States Court of Appeals for the Fourth Circuit has held that "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581,

594–95 (4th Cir. 1982) (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n. 2 (4th Cir.1974)).  Moreover, courts routinely do not follow the rule where there is evidence of bad faith, anticipatory lawsuits, forum shopping, or a race to the courthouse.  *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005).  The Court, however, sees no reason why the first-to-file rule should not apply here.  Thus, in the interest of justice, the first-to-file rule counsels the Court to transfer the case to the Southern District of New York.

Considering the four factors, Plaintiff's choice of the Eastern District of Virginia deserves some but not insurmountable weight.  Convenience to witnesses and parties is about equal in both the Eastern District of Virginia and the Southern District of New York.  The interest of justice, however, heavily points to the Southern District as a more appropriate venue.  Given Defendant's insistence of defending with facts relating to the parties' Photo Agreement, litigation in this case will substantially overlap with litigation in the New York Case.  Finally, the first-to-file rule applies and advises the Court to transfer the case to the Southern District of New York.  Accordingly, the Court will transfer this case to the United States District Court for the Southern District of New York.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Henry E. Hudson
Senior United States District Judge

Date: **Nov. 4, 2021**
Richmond, Virginia